Miller. On behalf of Mr. Miller, Mr. J. Eric Pittman, I'm going to have to get out of the way to meet Sally Swiss. I'm going to deviate here for a moment. Mr. Pittman, would you like to introduce Cole Counsel? Judge, this is Cole Pittman, and he's probably going to handle the rebuttal today. Well, we're delighted to have him. Welcome, young man. Are otherwise both sides ready to proceed? And you may proceed when you're ready. May I please report, Counsel? I'll give you a brief factual background, Judge. There were judges, this was a, there was a search warrant executed in the case. Three firearms and some ammunition were recovered at the defendant's house. He was subsequently, after a bench trial, found guilty of all five counts. He was charged with the three firearms offenses, the ammunition count, and electronic harassment. The subject of the appeal deals with the firearms and FOIA violations. I think the heart of the issue here is do the non-resident exceptions apply in this case? The FOIA card act in section 2B9 and B10 set forth some exceptions to possessing a FOIA card or possessing a firearm in Illinois without a FOIA card. Let me ask you a threshold question. Does the FOIA card act in question here define resident or non-resident? It does not, Judge, as far as I could find. The section, the application for the FOIA card act at section 65 slash 4B2 Roman numeral 14, it just says resident of Illinois, and there's no other reference that I could find. Should we go look to some of the cases that just talk about resident general, like Hatcher and some of these other cases? Judge, I would argue that it's not necessary in this case because of Sergeant Waller's testimony regarding the FOIA card act. And if you recall, Sergeant Waller was from the Illinois State Police. He's charged with, basically, he's responsible for all the FOIA cards that were issued in the state of Illinois during the relevant time period. And he testified that what establishes residency for his purposes was a possession of either an Illinois driver's license or a state ID. And in this case, the issue would become the driver's license because Mr. Miller had a Wisconsin driver's license and had surrendered his Illinois driver's license. You're basically saying it's the absence of. In other words, you're a resident if you have an Illinois license. Therefore, if you do not have one, you are not a resident. Exactly. That really was his argument. How can we offer or allow a sergeant from the Illinois State Police, however well experienced he is or what authority he's been given by the state police, to basically testify to a legal conclusion? Isn't that Judge Clancy's, Clancy Bowles? Judge, yes and no. Interpreting the statute is obviously the court's job. But if you're looking at whether or not the statute is clear or unambiguous, I think the testimony of the sergeant from the state police is responsible for administering the act is relevant to your, I guess, interpretation or looking at it. Because if he believes that the driver's license is what is crucial, a layman reading the statute, whose statute covers everybody in the state, I think it gives our argument extra credence that if he reads it like that, that the statute then becomes ambiguous, I guess, when we're looking at it. If we're looking at the state of Illinois or a resident of the state versus, and the requirement of the driver's license, and then if it, if there is an ambiguity, you know, we'd argue the doctrine of lenity applies and it must be strictly construed against the state and for the defense. Let me ask you this. You are actually asking us to read is synonymous with residency. Isn't that really the bottom line part of the argument? For the Ford Cup Act, yes. Yes, underneath the act. Now let me take it in a broader, more global context. Would the legislature have contemplated that somebody who's living in Illinois would be able to drive across the border, obtain a license, come back in Illinois and be able to legally possess weapons, even though they were ineligible to legally possess those weapons in Illinois? Is that, would that be troubling at all? Yes. From a policy standpoint? Yes. Yes. And I think what's different here is he's, the defendant was in the process of relocating to Wisconsin. He worked in Wisconsin. He had owned land in Wisconsin and also testified that he was leasing an apartment, I believe, or a part of a house in Wisconsin. So it wasn't so simple as just, if the Illinois driver's license is required or is, if, let me go backwards, if it's not that easy to defeat the purpose of the statute, I don't think, Judge, and applying the facts in this case, it makes that a little bit different than the hypothesis. And I think we probably shouldn't be, I mean, there's a potential for abuse if that, in fact, was allowed to go on. However, your case doesn't really necessarily stand or fall on that. If you could have established under the multi-element test that he was, in fact, a Wisconsin resident, but I think you've got some issues with that as well. With that, and I agree it's not that clear cut, but... I guess to put it bluntly, if we don't buy your argument that licensing, a license is synonymous with establishing residency, what factors can you point to as to convince us that he actually was a resident of Wisconsin? The fact that he owned real estate in Wisconsin, his testimony was that he worked in Wisconsin, his testimony, and this is Mr. Miller's testimony, was that he rented, and again, I just don't recall if it was an apartment or a part of a house, in Wisconsin, and he also testified his intent was to move his family and relocate them up there. He was building property, he was building a house on the real property that he owned in Wisconsin. I believe that was in Cable, Wisconsin. Based upon the evidence presented, could a rational fact finder have determined that he was, in fact, an Illinois resident at the time, based upon the evidence presented at trial? Yes. Yes. So I mean, this licensure issue is really the crux of your case. Yes. Yes. Yes. Yes. I think that's, yes. So how does this case, then, the facts tie into your argument of an effective assistance at counsel? If it, number one is Mr. Miller's landlord was not called, and Ms. Swiss brought up in her brief the fact that there's no evidence as, in the record, as to how that would have helped, and that's part of our issue. If you do find that there was not enough evidence of residency, I think there was ample opportunity to establish some other testimony regarding his residency by counsel that wasn't done. Like what? The landlord testifying, tax returns, pay stubs from his Wisconsin employer that was not brought in. But didn't he also work in Indiana and Illinois? He did, yes. I mean, so I guess we're looking for the smoking gun to say he is a resident of Wisconsin to the there's not a smoking gun, but when you look at the evidence that was presented, what could have been presented, and then the fact that the testimony from the defendant was when he was arrested in September of 2012 at his house, he told everybody that would listen he was a resident of Wisconsin, my Wisconsin driver's license is in the car, please go take a look at it. I think that shows his intent and where his head was at in terms of where he was establishing his domicile. Before you said he was in the process of relocating to Wisconsin, when is that complete? He was relocating his family. I believe he was a resident there, but he was in the process of relocating his wife and child as well. Let me ask you this question then. I mean, I remember the facts. Okay. You can have many Where is Wisconsin to the exclusion? Because as I recall, it's not only my intent to move there, but my abandonment of my domicile here, wherever here had been. That's kind of what I'm looking for. Where's that threshold? I think, and this goes back to the driver's license, when he surrendered his Illinois driver's license. Didn't he surrender that after he got arrested? No, no. Here's what happened. It was on, I believe it was August 20th or August 30th. He actually surrendered it. He didn't actually surrender, did they punch a hole in it? They punched a hole in it, issued the new one. But he kept the license, right? They did give him a license back. But the Illinois abstract that was introduced, what I'm assuming is by the time that they got the notice that he's surrendered his license, it was on the date that was after the arrest. But he did have the license, his Wisconsin license that was issued prior to the arrest, as well as the Illinois driver's license. So your position is the Secretary of State took action on a notification from Wisconsin after he was arrested? Correct. But that the act of obtaining a Wisconsin license, that's the operative issue? Yes, that's what I believe, Judge. With regard to the rental of the property in Wisconsin, I don't know if this is in the common tenancy, was there some lease that was involved? Judge, it was, the testimony was that there was no lease at that time. It was a handshake agreement with the landlord. I believe in the pre-sentence report, he may have given the probation officer a lease that was executed after the trial. So there was no written lease at the time of the arrest? Correct. That's correct. Isn't some of the evidence from Anderson speculative at this point in time? I mean, it's maybe something that could potentially be developed at a post-conviction proceeding, but we really don't know what Anderson would say. I mean, we know what your client said happened, but that doesn't necessarily translate into A, did the attorney even contact Anderson? We don't know that. What did Anderson tell the attorney? What would Anderson testify to? That's true, Judge. There's nothing in the record. So, I mean, based on this record now, that may be something from post-conviction. Correct. I agree with that, Judge. If... So assuming argument that your Honor's fine, that the defendant was a non-resident, I think there's sufficient evidence in the record that would show that sections 2B9 and 2B10 are applicable regarding the defendant possessing the firearms with ammunition separate in the firearms case. I believe it's a reasonable inference for the facts that the ammunition was separate. He did testify. He traveled to Illinois with the firearms case and the ammunition separate. Ms. Swiss, in her brief, noted that there was no exact testimony that when the police obtained the firearms from his house, the 835 Hill Street in North Aurora, which he owns with his wife, there was no evidence that the ammunition was separate. But I think it's a reasonable inference based on that testimony, Judges. And then as to section 2B10, I think that non-resident exception would apply, too, if your Honor's fine that he was not a resident of Illinois for purposes of the Ford-Card Act. The testimony was clear. I think the state elicited this, that he purchased the firearms from Vander Mountain in Wisconsin, completing the federal form, and there was the relevant wait period, and then he picked them up there after he did get the Wisconsin driver's license. And that is to the two rifles. I believe the third, the handgun, he bought that from a person. That did not go through. He didn't buy that from a retail store. Whose burden was it at trial to prove the exceptions? Both to prove non-residency and on case-to-no-vote? I believe that the non-resident exception, it would be up to the trial counsel, the defense, to establish by a preponderance of the evidence some evidence of the exceptions, and then the burden shifts back to the state, which I believe was done with the introduction of the driver's license and the testimony about how he obtained the weapons and what he did with them prior to the arrest. And the uncased? The uncased, he testified that he transported them, cased. No, the question was whose burden of proof? Oh, as to the uncased, I believe it's the defendant's by preponderance that shifts the burden to the state. If they establish some evidence of the exception, then the burden shifts to the state. So the defendant has the initial burden. The state doesn't have to come forward and disprove the exemption, right? I don't think so, Judge. I agree with that, because otherwise it doesn't make sense to disprove every exception. And like counsel pointed out in her brief, it was in a separate section, and I can see that she was correct about that. Thank you. Good morning, Your Honors. Counsel. So the question we have here really is, first of all, whether a driver's license is synonymous with residency. And the answer to that is pretty clearly no. Even the statutory provisions which the defense has pointed to make it really clear, the statute makes it really clear, and there's no ambiguity, that in fact, to get a FOIA card, you have to both submit evidence of residency and you must submit your driver's license. If, obviously, the driver's license makes you the resident, you wouldn't have no need to submit evidence of residency. You raise an interesting point. How does a layperson distinguish these fine statutory provisions versus somebody who says, hey, if I go to the state and they accept my application for a driver's license, that's, to me, I'm probably a resident there. So does he get the rule of lenity to say, well, you know, there's a reason why mines could differ, therefore, why should I be criminally prosecuted? No, I don't believe so, because a person, I think, is looking at it backwards. It's looking at it as, like, if somebody will give me a driver's license, well, where do you go to get your driver's license? You would go to the state, generally, where you have the most contacts. But that's why it's got to be a separate concept and why the statute provides it separately, too. It's because there are instances exactly like this where somebody might be trying to get around a provision that's different, you know, here than it is in the other states where they don't have this FOIA Act. And also, you know, if you have a driver's license, you have to have some additional indications of residency, I guess, you know, going back to why we don't equate them, because you can have a driver's license and, at that point, have all sorts of indicia that this is where you're really living and you feel this is where you presently have the intent to live and, you know, make it your home and this is your primary home, because obviously you could have a secondary home. But still, when you get the driver's license, even if you have all that, that can change. So while the driver's license is some indication or indicia, just because you, to get a driver's license, and I didn't cite this in my brief, but, you know, obviously there's a site, the Secretary of State site, and it takes you to CyberDriver, Illinois, I believe, tells you that you have to bring in other documentary evidence of that you're still, you know, living there within a certain period of time, certain documents. The Illinois Secretary of State? The Illinois Secretary of State site takes you to CyberDriver, Illinois, which tells you then what documents are proper. Why can't he make the argument that Wisconsin determined he was a resident there because they gave him a license? Well, I think that, first of all, again, that's why the statute says you have to be a resident. It doesn't say you just have to have a driver's license, you have to be a resident. So we can look beyond that when we're looking at... But isn't that pretty compelling evidence? I mean, don't we respect the sovereignty of another state that's determined this person is now a resident of our state? We indicate so by granting him the privilege to drive with a Wisconsin license. Well, I think it can often be one indication. But as in this case, if my memory is not failing me here, and I didn't have good notes on this part, but I think the defendant even testified that here when he went to get his Wisconsin license and you would think that they would have him prove some type of, you know, some type of documentary evidence, he said that because he had lived there before, they asked him for nothing. Well, that would certainly... But that's not the point. I mean, do we now take the policy position that we look at decisions of other states and say, eh, it might have been all right for you, but not good enough for us? Well, I think when we're interpreting our law and asking whether somebody is a non-resident, we have to look at whether or not that established what happened there, including how he got his driver's license and what that driver's license means. We have to determine whether or not that means that that's the primary resident. But that's my question. So we're taking the policy position then that no matter what decisions another state makes, we're reserving the right to look, to basically be the appellate court of their decision, look at the facts they had and decide whether or not we think they made the right decision. I don't believe that that's quite the way it goes, because I don't believe they're making any... By giving you a driver's license, I don't believe they are making a decision, the Secretary said. Well, it's not... They didn't randomly hand a license to every third guy in line. They made, right or wrong, they analyzed what was in front of them and said, that's enough, here's your license. I mean, do states give licenses to non-residents? Well, so no. So what I'm saying is that what they thought they had is documentary evidence which showed that he was a resident. But again, that's you saying that that wasn't enough. Well, we're... Aren't you reviewing what Wisconsin did? Pardon me. Not really, because I think perhaps there are people also who could give the proof that's necessary to be a resident and could, you know, maybe think, well, this is really close, I'm a resident here, I'm a resident there. You know, I mean, I have enough documents to prove that I'm a resident in either of these. So I think that, you know, when you look at it that way, Wisconsin's not making an actual determination that he is... that this is his primary residence. By giving him a driver's license... How do we know that? That's a DOR's record. We don't know that, do we? Well, I believe when you come into a documentation, what they're looking at is, is there sufficient indicia that you've come to us and asked, you know, if you can... you know, you're saying you're a resident and that's basically what you're doing. You're coming to them saying, I'm a resident, here's some proof. So it's the part about, I'm saying I'm, you know, a primary resident and that's what we read into our statute. I think you're dancing around the questions that she's asking. Your counsel, your opponent would argue, Wisconsin has determined there was sufficient indicia of residency, otherwise they wouldn't have given him a license. They don't give a license to anybody who shows up there unless they're convinced that he's a resident of their state. Your position has to be, and there's nothing wrong with making the argument, that yes, even if that's the case, Illinois would have to still reserve the right to look beyond the license. Well, and that is the argument I'm making, that Illinois, for the construction of this act, is trying to determine whether or not, in fact, that's sufficient in looking at all the indicia of residency. And here we have so much more than just the driver's license. The driver's license may have, you know, had been, you know, if it were properly issued, which the defendant put into issue, I think, by his own testimony, but if it were properly issued, it may have, it may support at least some evidence that he has some documentation, and so, therefore, some indicia and some facts in his life, which shows that he may, in fact, have some connections. Well, let me ask you this. Can you summarize that for us succinctly? What factors point to the fact he was still a resident of Indominus Island, Illinois, in this case? He owns the home in which his wife, his child, his dogs are living. He's there when they come to stop by, you know, a couple times without any type of communication to him or warning to him. He says that's where his home office is. He doesn't say his home office. He says later in testimony that he has a home office in both, but initially in his statement at the time that the guns were taken, he said his home office is in North Aurora. He stores his weapons there, and that's, and I do that on a credibility determination, which was not against the manifest way of the evidence and hasn't even been argued to be against the manifest way of the evidence. The court found that his statement that he was there just for camping was not believable, that he actually, these were stored there. They were stored inside of a closet in his home office. He had a box for the gun there. He had other possessions there. He paid the utility bill there. He had another bill also, I think, showing that he still, and he admitted that he was still on the mortgage and the mortgage shows that. They have a deed for the property. And then he, again, it's the defendant's burden. What has he shown other than the driver's license in Wisconsin? He's shown that he says that he was renting, but yet there's no rent agreement yet. So maybe there was an intent to rent, but there certainly was no strong indicia of that. He talks about, well, he has on his driver's license and says that he's renting from Chad Anderson. And yet when he spoke with the detectives, excuse me, with the police officers at the time, excuse me, he said that Anderson's address was only his mailing address, that actually where he lived or the reason he's a resident is because of his unapproved property. And it did show that it was unapproved property. He later said he was planning to build something on there, but it was in a different town. So it's not even consistent. Even his own testimony doesn't support that he really is living in Wisconsin. What's the address on the Wisconsin license? The address on the Wisconsin license is in Muskego, I believe, and that's Chad Anderson's address. Where he said he was renting? Where he said he was renting, but without a rental agreement because he hadn't had time to work anything out. And as I said, initially what he said in his statement, that was a testimony, but his statement to police at the time when he was first brought in was that that was just his mailing address on his driver's license. But then in fact, he was a resident because he owned property up further in Wisconsin, up further north. And lastly, I would say that if for any reason his defense argument that this equates, this driver's license equates with residency and therefore if you don't have a driver's license, you're a non-resident, even just the logic of that doesn't make sense because obviously you can be in Illinois and not have a driver's license or an Illinois state ID and you can be a resident, you can be here, living here a large part of your life, living off the grid or whatever. Some people do it and don't have a driver's license. It doesn't make them a non-resident just because they don't have the driver's license. And in this case, even though he testified that, well, he testified I think that he got a punch hole, the other driver's license was not given up, the Illinois one. So even under his... Well, what control does he have over that? He doesn't. And I don't believe... And the Secretary of State can sit on those records for a year and not withdraw. He doesn't. And when that was issued really matters to the argument. And what I'm saying is that... What was issued, the Wisconsin license or the surrender shown on his... The date of surrender, I'm sorry. Okay, I agree. Yeah, I don't really think that that makes a distinction, but if it is a matter of, you know, under what license is he operating, both of those were, you know, at the time that he got his weapons, he still had his Illinois license. So therefore, we would just ask this court to determine that he has not carried his burden of proof in terms of a preponderance of the evidence in showing that he is a resident of Illinois... Excuse me, a non-resident of Illinois and a resident of Wisconsin. And so we would ask this court to affirm the judgment. Do you have any questions? Questions? Okay, thanks.